**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

Joseph S.,

                                         Plaintiff,

       v.                             5:24-CV-1228
                                            (MJK)

Commissioner of Social Security

                                        Defendant.

---

Howard D. Olinsky Esq., for Plaintiff
Kristina D. Cohn Esq., Special Asst. U.S. Attorney, for Defendant

Mitchell J. Katz, U.S. Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

Joseph S. brought this action under the Social Security Act (42 U.S.C. § 405(g)) seeking judicial review of the Social Security Commissioner's final decision denying her application for benefits. (Dkt. 1.). Joseph S. consented to the jurisdiction of a Magistrate Judge. (Dkt. 5). Both parties filed briefs (Dkts. 11, 12, 13) which the Court treats as motions under Fed. R. Civ. P. 12(c), in accordance with General Order 18.

# I.   PROCEDURAL HISTORY

The Court assumes the parties' familiarity with the procedural history of this case and will incorporate it by reference, if necessary, in its analysis.

# II.   GENERALLY APPLICABLE LAW

## A.   Disability Standards

To be considered disabled, a claimant seeking DIB or SSI benefits must establish that they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A). Additionally, the claimant's

> physical or mental impairment or impairments [must be] of such severity that they are not only unable to do their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which they live, or whether a specific job vacancy exists for them, or whether they would be hired if they applied for work.

> 42 U.S.C. § 1382c(a)(3)(B) (cleaned up).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 (for DIB) and 416.920 (for SSI), to evaluate disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [they are] not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [their] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [them] disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [they have] the residual functional capacity to perform [their] past work. Finally, if the claimant is unable to perform [their] past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*); *see also Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Berry*, 675 F.2d at 467). The claimant has the burden of establishing disability at the first four steps. *See Berry*, 675 F.2d at 467. If the claimant establishes that their impairment prevents them from performing their

past work, then the burden shifts to the Commissioner to prove the fifth and final step. *Id.*

## B.    Scope of Review

When reviewing a final decision of the Commissioner, courts must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Id.* at 417; *see also Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* Yet this standard is a very deferential standard of review "— even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, reviewing courts consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). But reviewing courts may not substitute their interpretation of the administrative record for that of the Commissioner

if the record contains substantial support for the ALJ's decision. *Id.*; *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

ALJs need not explicitly analyze every piece of conflicting evidence in the record. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *see also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]"). But ALJs cannot "'pick and choose' evidence in the record that supports [their] conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *see also Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  FACTS

The record includes Joseph S.'s medical records which the parties are familiar with. The Court will refer to the pertinent records and the hearing testimony in its analysis of the parties' claims as appropriate.

## IV.  THE ALJ'S DECISION

At step one of the five-step-sequential analysis, ALJ Hoffman determined that Joseph S. has "not engaged in substantial gainful activity from September 26, 2019, the amended alleged onset date." (T. 1086).

At step two, ALJ Hoffman concluded that Joseph S. had the following severe impairments: stage 2 non-Hodgkin lymphoma (in remission), type II diabetes mellitus, and diabetic neuropathy. (*Id.*).

At step three, ALJ Hoffman determined that Joseph S. "does not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart. P, Appendix. 1." (T. 1090) (internal citations omitted).

After this, ALJ Hoffman determined that Joseph S. had the residual functional capacity ("RFC") to perform:

> the exertional demands of light work as defined in 20 CFR 404.1567(b) and 416.967(b) with additional non-exertional limitations. Specifically, the claimant can occasionally lift and carry twenty pounds; can frequently lift and carry ten pounds; can sit for six hours and stand and/or walk for six hours, all in an eight-hour workday with normal breaks; can occasionally climb ramps or stairs; and can occasionally climb ladders, ropes, or scaffolds; can perform occasional stooping, kneeling, crouching, and crawling; and can perform occasional balancing as that term is defined in the *Dictionary of Occupational Titles* (DOT) / *Selected Characteristics of Occupations* (SCO)

(T. 1091).

To make this finding, ALJ Hoffman considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p" and "the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c." (T. 1092).

At step four, ALJ Hoffman declined to make a finding as to whether Joseph S. can perform any relevant past work because she elected to utilize the expedited process under 20 C.F.R. § 404.1520(b). (T. 1102).

Finally, at step five, ALJ Hoffman concluded that "considering" Joseph S.'s "age, education, work experience, and residual functional capacity, without consideration of his work experience, there are jobs that exist in significant numbers in the national economy [Joseph S.] can perform." (T. 1104). Accordingly, ALJ Hoffman determined that Joseph S. is not disabled as defined by the Social Security Act. (T. 1105).

## V.    ISSUES IN CONTENTION

Joseph S. argues: (1) ALJ Hoffman failed to perform the supportability and consistency analyses on Patrick Carguello, D.O.'s opinion; (2) because his non-exertional impairments have more than "very little effect" on the occupational base of light work, ALJ Hoffman's decision not to consult a vocational expert constitutes "harmful" error; and (3) ALJ Hoffman's decision failed to follow the agency's borderline age policy, as set forth in 20 C.F.R. §§ 404.1563, 416.963 and explained in the POMS at DI 25015.066. (Pl. Br., pgs. 13-30).

The Commissioner, on the other hand, argues: (1) ALJ Hoffman properly considered the medical opinions of record; (2) substantial evidence supports ALJ Hoffman's decision; and (3) ALJ Hoffman properly considered Joseph S.'s borderline age at step five (Def. Brief, pgs. 7-18).

## VI.    DISCUSSION

The Court affirms ALJ Hoffman's decision. First, ALJ Hoffman performed the supportability and consistency analyses on Dr. Carguello's opinion. Second, ALJ Hoffman's decision not to consult a vocational expert is not reversible error. Finally, ALJ Hoffman analyzed

the agency's borderline age policy and properly exercised his discretion to utilize Joseph S.'s chronological age.

### A. ALJ Hoffman properly evaluated Dr. Carguello's medical opinion.

ALJ Hoffman properly performed the supportability and consistency analysis of Dr. Carguello's opinion. The Court therefore affirms ALJ Hoffman's decision.

ALJs "must consider all medical opinions and evaluate their persuasiveness based on their supportability and consistency, the author's relationship with the claimant and specialization, and other factors." *Tyler W. v. Comm'r of Soc. Sec.*, No. 22-CV-01345 (CFH), 2024 WL 1075209, at *7 (N.D.N.Y. Mar. 12, 2024) (cleaned up). "The two most important factors for determining the persuasiveness of medical opinions are consistency and supportability[.]" *Stephanie F. v. Kijakazi*, No. 20-CV-1528 (BKS), 2022 WL 3355964, at *9 (N.D.N.Y. Aug. 15, 2022). Because that's so, ALJs must "explain how [they] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

"Supportability" means that "the more relevant the objective medical evidence and supporting explanations presented by a medical

source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1) (cleaned up). "Consistency" means that "the more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). In plain English, supportability is an internal check—examining whether the medical source references medical evidence that comes from the medical source—while consistency is an external check—examining whether the medical sources' opinion is similar, or dissimilar, to the opinions of other medical and non-medical sources.

An ALJ's "failure to explain the supportability and consistency of the medical opinions in the record is procedural error." *Stephanie F.,* 2022 WL 3355964, at *9. And procedural errors, including an ALJ's failure to comply with the articulation requirement, are subject to harmless error review. *See id; see also Loucks v. Kijakazi,* No. 21-CV-

1749, 2022 WL 2189293, at *2 (2d. Cir. 2022) (summary order) (applying harmless error review to a procedural error).

Dr. Carguello opined that Joseph S. can: (1) stand/walk for less than two hours and sit for at least six hours in an eight-hour workday; (2) occasionally lift and carry less than ten pounds; frequently twist; occasionally stoop/bend; rarely crouch, squat, and climb stairs; and never climb ladders; (3) frequently look down, turn his head right or left, look up, and hold his head in a static position. (Tr. 1652). Dr. Carguello further opined that Joseph S. can frequently grasp, turn, twists objects, perform fine manipulations, and reach overhead. (Tr. 1653). He indicated that Joseph S. would need to take unscheduled breaks during the eight-hour workday, would be off task more than 20 percent of the workday, and would be absent from work more than four days per month. (Tr. 1653).

Joseph S. argues that the "ALJ's decision is erroneous because it does not adequately explain how the factors of supportability and consistency led the ALJ to find the disabling portion of the opinions of Dr. Carguello to be unpersuasive." (Pl. Br., pg. 14). Joseph S.'s argument is unavailing. ALJ Hoffman supportably concluded that Dr.

11

Carguello's opined limitations were not supported by Joseph S.'s unremarkable musculoskeletal and neurological physical examination findings. Neurologically, Dr. Carguello's treatment notes indicate that Joseph S. was oriented to time, place, and person. (T. 579, 581, 593, 605, 611, 881, 1686, 1699, 1738). Dr. Carguello's notes that Joseph S.'s musculoskeletal system is "normal." (*Id.*). Dr. Cargeullo's medical records are devoid of any objective medical findings supportive of Joseph S.'s position.

The ALJ also correctly concluded that Dr. Carguello's opinion regarding the side effects of Joseph S.'s medications were not well supported. (T. 1101). At a December 7, 2023 encounter, Joseph S. reported no feelings of lightheadedness or falls despite Dr. Carguello's opinion to the contrary. (T. 1735). And although on September 26, 2023 Joseph S. reported side effects from Ozempic (T. 1679), he reported "no complaints" and "no nausea [or] vomiting" during an October 30, 2023 encounter after his medication was switched to Mounjaro (T. 1741). Beyond that, there are no other side effects from Joseph S.'s medications noted in Dr. Carguello's treatment notes that Joseph S. required treatment for.

ALJ Hoffman also supportably concluded that Dr. Cargeullo's analysis of Josph S.'s need for unscheduled breaks, absenteeism and time off task was not well supported. Dr. Carguello's opinions regarding Joseph S.'s limitations are reported in a check-box form. (T. 1653). While true that a medical opinion cannot "be discounted . . . based on the naked fact that it was provided in a check-box form," *Colgan v. Kijakazi*, 22 F.4th 353, 361 (2d Cir. 2021), it may be discounted if it is not "supported by substantial evidence." *Schillo v. Saul*, 31 F.4th 64, 77 (2d Cir. 2022); *see also Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2d Cir. 2004) (stating that a standardized form without accompanying explanation is "only marginally useful for purposes of creating a meaningful and reviewable factual record"). Here, ALJ Hoffman found Dr. Cargeullo's opinion unsupported by "clinical or diagnostic findings or narrative explanation for the limits provided to further support the degree of absenteeism and off-task behavior identified." (T. 1102); *see also see also Robert O. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1612 (TWD), 2022 WL 593554, at *13 (N.D.N.Y. Feb. 28, 2022) (holding that the ALJ did not err in concluding medical opinions on check-box forms lacked

supporting explanations "or references to specific clinical or diagnostic findings to support the proposed limitations.") (cleaned up).

In addition to her supportability analysis, ALJ Hoffman also properly concluded that Dr. Carguello's opined limitations were inconsistent with the limitations identified by the State Agency consultants and Dr. Lorensen, the consultative examiner. ALJs are entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of Social Security disability. *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) (explaining that "[t]he report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *see also Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 78 (2d Cir. 2018) (substantial evidence supported ALJ's RFC finding; ALJ "largely relied on the report of a consultative examiner"); *Petrie v. Astrue,* 412 F. App'x 401, 405 (2d Cir. 2011) ("The report of a consultative physician may constitute such substantial evidence.").

In contrast to Dr. Carguello's opinion, State Agency consultants Drs. Randall and Abueg opined that Joseph S. can: (1) occasionally lift and/or carry 20 pounds; (2) frequently lift and/or carry ten pounds; (3) stand and/or walk about six hours in an eight-hour workday; and (4) sit about six hours in an eight-hour workday. (Tr. 75, 101-02). Drs. Randall and Abueg also opined that Joseph S. had: (1) only occasional limitations for climbing and balancing; and (2) no limitations for stooping, kneeling, crouching, and crawling. (Tr. 75-76, 102-03). State agency medical consultants Drs. Naroditsky and Periakaruppan opined that Joseph S. can: (1) occasionally lift and/or carry 20 pounds; (2) frequently lift and/or carry ten pounds; (3) stand and/or walk about six hours in an eight-hour workday; and (4) sit about six hours in an eight-hour workday. (Tr. 1197, 1208). Drs. Naroditsky and Periakaruppan also found that Plaintiff had only occasional postural limitations. (Tr. 1197-98, 1208).

Dr. Carguello's medical source statement is also inconsistent with the findings of consultative examiner Dr. Lorensen who examined Joseph S. on three separate occasions. (Tr. 868, 905, 1622). Dr. Lorensen opined that Joseph S. had no physical limitations for sitting,

standing, and walking and only moderate limitations for climbing. (Tr. 868, 905, 1622). ALJ Hoffman supportably concluded that Dr. Lorensen's opinion that Joseph S. had no limitations siting, standing, walking, and only moderate limitations for climbing was inconsistent with Dr. Carguello's extreme limitations and more persuasive than Dr. Carguello's opinion because it was supported by Dr. Lorensen's own findings that Joseph S. had a normal gait, can walk on his heels and toes, could squat fully, required no assistive devices and required no help getting on and off the examination table. (Tr. 866, 903). Dr. Lorensen also reported in a March 18, 2021 examination that although Joseph S. had a small decrease in lumbar spine range of motion and diminished sensation to pinprick in the ankles, he had full range of motion of the cervical spine, a negative straight leg raising test bilaterally, and full range of motion and full strength of the upper and lower extremities. (Tr. 867). In June 2021, Dr. Lorensen further reported that Joseph S. had full lumbar range of motion and normal sensation throughout the extremities (Tr. 904) and in December 2022, he reported a normal gait, no ulcers in the lower extremities, and full strength and range of motion of the extremities. (Tr. 1621). Dr.

16

Lorensen's opinion was also consistent with the normal neurological and musculoskeletal findings of record. (Tr. 579, 581, 593, 605, 611, 881, 887, 1055-56, 1063, 1100, 1678).

In addition to his opined limitations, Dr. Carguellos' report that Joseph S. suffered side effects from medications is inconsistent with Joseph S.'s self-reporting on disability forms and to doctors that he had no such side effects. (Tr. 309, 320, 322, 331, 345, 1021, 1498, 1603). Similarly, Dr. Carguello's report of Joseph S.'s subjective complaints of severe foot pain and "nerve zaps" from the ankles to the feet is inconsistent with generally good neurological and musculoskeletal findings (Tr. 579, 581, 593, 605, 611, 881, 887, 1055-56, 1063, 1100, 1678) and occasional decreased sensation in both feet is inconsistent with otherwise normal neurological findings, no ulcers on his feet, and a normal gait (Tr. 386, 400, 409, 412, 418, 623, 629, 634, 682, 689, 1069, 1664).

***

The Court finds that the ALJ Hoffman properly evaluated the supportability and consistency factors of Dr. Carguello's medical opinion. Although Joseph S. disagrees with ALJ Hoffman's analysis, the

17

question is not whether substantial evidence supports Joseph S.'s views; "rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013). Joseph S.'s disagreement is not a basis for remand. *See Wilson o/b/o J.J.W. v. Comm'r of Soc. Sec.*, No. 1:19-CV-737-DB, 2020 WL 3447800, at *5 (W.D.N.Y. June 24, 2020) ("[M]ere disagreement with the ALJ's findings does not warrant remand."). And so, the Court declines to disturb ALJ Hoffman's evaluation of Dr. Carguello's opinion.

## B. Substantial Evidence Supports ALJ Hoffman's Sep Five Finding

The Court finds that substantial evidence supports ALJ Hoffman's determination at step five of the sequential evaluation. Because Joseph S.'s non-exertional limitations did not significantly limit the range of work permitted by his exertional limitations, ALJ Hoffman supportably relied on the Medical-Vocational Guidelines and not the testimony of a vocational expert. For this reason, the Court declines to reverse ALJ Hoffman's step five finding.

The burden shifts to the Commissioner at Step Five "to show there is other work that [the claimant] can perform." *McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014) (quoting *Brault v. Soc. Sec. Admin.,* 683

F.3d 443, 445 (2d Cir. 2012)). "If a claimant has non-exertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert." *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)). "However, the 'mere existence of a non-exertional impairment does not automatically . . . preclude reliance on the [Medical-Vocational] guidelines.'" *Zabala*, 595 F.3d at 410-11 (quoting *Bapp*, 802 F.2d at 603). "A non-exertional impairment 'significantly limits a claimant's range of work when it causes an additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" *Zabala*, 595 F.3d at 410-11 (quoting *Bapp*, 802 F.2d at 605-06).

Here, Joseph S. maintains that ALJ Hoffman erred in failing to procure vocational expert testimony because his non-exertional impairments have "*more* than 'very little effect' on the occupational base of light work." (Pl. Br., pg. 22) (quoting SSR § 83-14) (emphasis in original). The Court disagrees.

19

After fashioning the RFC, ALJ Hoffman declined to make a finding under 20 C.F.R. 404.1520(h) whether Joseph S. could perform past relevant work. (T. 1102). ALJ Hoffman then found that Joseph S. could perform other jobs existing in significant numbers in the national economy based on the RFC for the full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with additional non-exertional limitations. (T. 1091.)

First, as determined above, ALJ Hoffman's RFC findings were supported by substantial evidence and based upon correct legal principles. The Court therefore finds Joseph S.'s argument that ALJ Hoffman failed to consider his non-exertional limitations to be without merit. ALJ Hoffman found that the impact of Joseph S.'s postural restrictions had "little or no" effect on the light occupational base. *See* (T. 1104); *see also* SSR 83-14 (limitations in climbing, balancing, kneeling, and crawling would not have significant impact to perform most light jobs); *see also Walton v. Commr of Soc. Sec.*, 18-CV-6140, 2020 WL 3964255, at *8-9 (W.D.N.Y. July 13, 2020) (finding no error in relying on the Grids where ALJ limited the plaintiff to light work with occasional stooping, bending, kneeling, crouching, crawling, and

20

climbing ramps and stairs, and no climbing ladders, ropes, and scaffolds); *Katherine Marie S. v. Comm'r of Soc. Sec.*, 18-CV-0233, 2019 WL 1427456, at *11 (N.D.N.Y. Mar. 29, 2019) (Dancks, M.J.) (finding no error in the ALJ's reliance on the Grids where RFC limited plaintiff to light work with only occasional climbing, balancing, stooping, kneeling, crouching, and crawling).

Finally, Joseph S.'s attempt to circumvent ALJ Hoffman's step five determination by alleging that she impermissibly used the phrase "little or no effect" rather than "very little" (as used in SSR 83-14) effect in describing the extent of Joseph S.'s non-exertional limitations on the occupational base of light work is a red herring. (Pl. Br., pg. 17). Although ALJ Hoffman did not use the precise language set forth in SSR 83-14, she supportably concluded that Joseph S.'s postural limitations had a *de minimis* effect on the occupational job base and certainly did not rise to the level of restrictions that warranted the need for vocational expert testimony. *See* (T. 1105); *see also Ramos o/b/o N.S. v. Saul*, No. 18-CV-0940L, 2020 WL 1285958, at *2 (W.D.N.Y. Mar. 18, 2020) (holding the ALJ's use of clumsy verbiage in two sentences out of a 19-page opinion had not deprived the court of meaningful review);

*see also Denhert v. Astrue*, No. 07-CV-897 (GLS/VEB), 2009 U.S. Dist. LEXIS 75287, at *12 (N.D.N.Y. Aug. 3, 2009) (despite the ALJ's use of "clumsy" language, "the ALJs ultimate conclusion that Plaintiff was not disabled as of the date of his application was supported by substantial evidence …"). Specifically, ALJ Hoffman thoroughly discussed how Joseph S.'s postural limitations did not significantly impact his ability to perform light work. (Tr. 1104-05) and the record evidence demonstrates that Joseph S. could squat fully and walk on heels and toes without difficulty (Tr. 866, 903, 1620.).

Finally, Joseph S.'s reliance on *Lisa G. v. Comm'r of Soc. Sec.*, No. 5:22-CV-552 (DJS), 2023 WL 4175295 (N.D.N.Y. June 26, 2023) in support of his argument that ALJ Hoffman should have elicited the testimony of a vocational expert is misplaced. In *Lisa G.*, plaintiff presented with postural, manipulative, and environmental limitations which the Court held was error for the ALJ not "to have considered what combined impact, if any, they would have had on Plaintiff's vocational opportunities." *Id.* at *4. Here, however, Joseph S. <u>only</u> has postural limitations.

In sum, ALJ Hoffman supportably relied on the Medical-Vocational Guidelines rather than relying on the testimony of a vocational expert. The Court declines to reverse ALJ's Hoffman's decision on this basis.

### C. ALJ Hoffman properly considered Joseph S.'s borderline age.

ALJ Hoffman supportably concluded that Joseph S.'s chronological age rather than the higher age category of persons of advanced age was more appropriate in determining whether Joseph S. was disabled.

"The regulations direct that the age category that applies to a plaintiff during the period for which [he or] she claims disability be used to determine whether or not [the] plaintiff is disabled." *Jeanette J. v. Saul, No.* 6:19-CV-0795 (ML), 2020 WL 4932047, at *6 (N.D.N.Y. Aug. 24, 2020). "The Grids contain three age categories: 'younger person' (under age 50); 'person closely approaching advanced age' (age 50-54); and 'person of advanced age' (age 55 or older)." *Kathy H. v. Comm'r of Soc. Sec.,* No. 5:19-CV-684 (ATB), 2020 WL 3960846, at *12 (N.D.N.Y. July 13, 2020) (quoting 20 C.F.R. § 404.1563(c)-(e)). "If [a plaintiff is] within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or

decision that you are disabled, [the ALJ] will consider whether to use the older age category after evaluating the overall impact of all the factors of [the] case." 20 C.F.R. §§ 404.1563(b), 416.963(b). "[T]he age categories are not to be applied mechanically in a borderline situation, such as where a claimant is within a few days or months of obtaining an older age category and using the older age category would result in a determination or decision that [the plaintiff] [is] disabled." *Waldvogel v. Comm'r of Soc. Sec.*, No. 6:16-CV-0868 (GTS), 2017 WL 3995590, at *11 (N.D.N.Y. Sept. 11, 2017) (citations and quotation marks omitted). "In evaluating whether to apply the older age category, the Agency considers 'the overall impact of all the factors in [the] case.'" *Id.* (quoting 20 C.F.R. §§ 404.1563(b), 416.963(b)). The failure to consider the borderline age situation and determine whether the higher age category should be applied is error that can warrant remand. *See Waldvogel v. Commissioner of Social Security*, No. 6-CV-0868, 2017 WL 3995590, at *12 (N.D.N.Y. Sept. 11, 2017).

To determine whether a borderline age situation exists, "ALJs will assess whether the claimant reaches or will reach the next higher age category within a few days to a few months after[,]" in relevant part, the

24

date of last insured or date of adjudication. HALLEX I-2-2-42, Borderline Age, 2016 WL 1167001, at *1. Then, if the plaintiff is "within a few days to a few months" of the older age category, the question is whether "using the higher age category [would] affect the outcome of the decision[.]" *Id.* "[I]f using the higher age category does not affect the outcome of the decision, a borderline age situation does not exist . . . . However, if the plaintiff is within a few days or months of the higher category "and using the higher age category does affect the outcome of the decision, a borderline age situation does exist[.]" *Id.*

Joseph S. argues that ALJ Hoffman's analysis of whether to utilize the higher age category in determining whether he was disabled was "flawed for several reasons." (Pl. Br., pg. 29). First, Joseph S. complains that ALJ Hoffman focuses on whether there is a "progressively more adverse impact on his ability to adjust to other work." (Pl. Br., pg. 29) (quoting T. 1104). Second, Joseph S. argues that "while it is true that Plaintiff is more than 'a few days' from the date he will attain age 55, the ALJ incorrectly depicts the pertinent time frame as being 'a few months' from turning 55, when it is actually only 53 days." (*Id.*) (quoting T. 1106). Third, Joseph S. maintains that ALJ

25

Hoffman incorrectly states that the factors related to Joseph S.'s education "do not negatively affect or have a more adverse impact in the case." (*Id.*) (quoting T. 1104). Fourth, ALJ Hoffman "improperly considered work experience which was done outside the period relevant to the claim. (*Id.*) (citing T. 1104). Finally, Joseph S. maintains that ALJ Hoffman "completely ignored the instructions in the [Programs Operation Manual System] which require consideration of the extent to which the occupational base is adversely affected by the RFC itself." (*Id.*).

In opposition, Defendant asserts that Joseph S. failed to sustain his burden of "demonstrating progressively additional vocational adversities supporting the use of the next higher age category." (Def. Bri., pg. 18). The Court finds Joseph S.'s argument to be without merit.

Here, ALJ Hoffman explained that Joseph S. "attained age 50 on September 26, 2019 [the amended alleged onset date], one day prior to his actual birthday" and that Joseph S. "will attain a higher age category of an individual of advanced age (age 55 or older in approximately 2-3 months from the date of this decision." (T. 1103). ALJ Hoffman noted that Joseph S. does not have a limited or marginal

education, that Joseph S.'s work was not performed in an isolated industry, and that Joseph S. had earnings above the substantial gainful activity level for many years. (T. 1104). Notably, ALJ Hoffman also found that Joseph S.'s "exertional and non-exertional limitations [were] already considered in conjunction with the Social Security rulings in determining that the Medical-Vocational Rules at the light exertional level would be more appropriate as a framework for the decision." (T. 1104).

Although Joseph S. disagrees with the ALJ Hoffman's decision not to categorize him as a person of advanced age, the ultimate determination on whether a claimant's borderline age or chronological age should apply is within the ALJ's discretion. *See Torres v. Comm'r of Soc. Sec.*, No. 18-CV-460, 2015 WL 544888 at *9 (W.D.N.Y. Jul. 16, 2019). Moreover, where evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. *See Rutherford v. Schweiker*, 685 F. 2d 60, 62 (2d Cir. 1982). Accordingly, the Court finds that ALJ Hoffman's age designation was not erroneous and is supported by substantial evidence. *See Martinez v. Comm'r of Soc. Sec.*, No. 17-CV-8949, 2019 WL1254842 at *27 (S.D.N.Y.

27

Mar. 19, 2019) (holding remand unwarranted where the ALJ acknowledged the claimant's borderline age (less than one month from turning 55) and considered non-mechanical application of the categories in determining it was appropriate to use the claimant's chronological age of 54).

## VII.   CONCLUSION

WHEREFORE, based on the findings above, it is

ORDERED, that Joseph S.'s motion for judgment on the pleadings (Dkts. 11, 13 ) is DENIED, and it is further

ORDERED, that Defendant's motion for judgment on the pleadings (Dkt. 12) is GRANTED, and it is further

ORDERED, that the decision of the Commissioner is AFFIRMED and Joseph S.'s Complaint is DISMISSED IN ITS ENTIRETY.

Dated: March 19, 2026

Digitally signed by
Mitchell J Katz
Date: 2026.03.19
13:33:59 -04'00'

Hon. Mitchell J. Katz
U.S. Magistrate Judge

28